UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ANTHONY LAMAR PETERSON,

      Petitioner,

v.                                                                CASE NO. 6:97-cv-1340-Orl-19
                                                (6:91-cr-101-Orl-19)
UNITED STATES OF AMERICA,                              (6:91-cr-117-Orl-19)

      Respondent.

_____

## <u>ORDER</u>

      This case is before the Court on Petitioner's Motion Filed Under Federal Rule of Civil Procedure 60(b)(6) for Relief From Final Judgment Order Denying 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Doc. No. 6, filed July 31, 2006).  Pursuant to the direction of the Court, the Government filed an Amended Response in Opposition to Petitioner's Motion Filed Under Federal Rule of Civil Procedure 60(b)(6) for Relief From Final Judgment Order Denying 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Doc. No. 15, filed December 18, 2006).  After careful consideration of the motion, the response, and the record from both of Petitioner's criminal cases, this Court finds that Petitioner's motion must be **GRANTED in part and an evidentiary hearing conducted on the remaining part**.

I.      *Procedural History*

A.      *Criminal Case 6:91-cr-101-Orl-19*

Petitioner was charged in two separate criminal cases with various offenses.  In case number 6:91-cr-101-Orl-19,[1] he was charged by indictment with possession with intent to distribute 50 grams or more of cocaine base (count one), possession with intent to distribute cocaine hydrochloride (count two), and using and carrying a firearm during and in relation to a drug trafficking offense (count three).  (Criminal Case 91-101 Doc. No. 1.)  Petitioner filed a motion to suppress all drugs, firearms, and evidence seized from the residence where he was arrested.  (Criminal Case 91-101 Doc. No. 16.)   After conducting an evidentiary hearing, the Court denied the motion to suppress.  (Criminal Case 91-101 Doc. No. 33.)

The case then proceeded to trial.  At trial, Orlando Police Officer Fawbush testified that in early May of 1991 he worked with an informant who made two controlled buys of crack cocaine from Petitioner.  (Criminal Case 91-101 Doc. No. 63 at 4-10.)  Based on the controlled buys, Officer Fawbush obtained a search warrant which he executed four days later.  *Id*. at 11-12.  During the search, law enforcement found Petitioner asleep on the bottom bunk of a bunk bed in the southeast bedroom.  *Id*. at 29.  Also located in the room were powder cocaine, crack cocaine, zip-lock baggies used to package crack cocaine, a knife with cocaine residue on it, a stapler, razor blades, and a firearm.  *Id*. at 17-23.  The firearm

_____

[1]Criminal Case 6:91-cr-101-Orl-19 will be referenced as "Criminal Case 91-101."

2

was under the mattress of the top bunk, and some of the crack cocaine was found between the pillows of the top bunk above where Petitioner was sleeping.  *Id*. at 19, 40.

Officer O'Dell, who was also involved in the search, testified that he found the loaded firearm underneath the top bunk "in close relation to [Petitioner] as he was laying in the bottom bunk."  *Id*. at 40-41.  Officer O'Dell further stated that the firearm was "[j]ust a few feet, arms length" away from Petitioner.  *Id*. at 42.  On cross-examination, Officer O'Dell admitted that Petitioner did not make any move to reach for the firearm.  *Id*. at 60. Although he did not check, Officer O'Dell also testified that he believed an adult lying down on the lower bunk could reach up and touch the firearm.  *Id*. 60-61.  However, he did not remember how the bunk bed was framed and did not know whether a person could see the firearm from the bottom bunk looking up.  *Id*. at 61.  After hearing the evidence,

the jury found Petitioner guilty of all counts as charged in the indictment.[2] (Criminal Case

91-101 Doc. No. 39.)

**B.      *Criminal Case 6:91-cr-117-Orl-19***

In case number 6:91-cr-117-Orl-19,[3] Petitioner was charged by indictment with

possession with intent to distribute over 50 grams of cocaine base (count one) and using

or carrying a firearm during and in relation to a drug trafficking offense (count two).

(Criminal Case 91-117 Doc. No. 1.) Petitioner filed a motion to suppress all drugs, firearms,

---

[2]At trial, the jury was instructed regarding using or carrying a firearm during and in relation to a drug trafficking crime, as follows:

> For you to find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:
>
> > First: That the defendant committed the crime alleged in Count I or Count II, or both.  I instruct you that possession with intent to distribute cocaine base, commonly known as "crack" cocaine, a schedule II controlled substance is a drug trafficking crime; and
> >
> > Second: That the defendant knowingly used or carried a firearm during and in relation to the defendant's commission of the crime alleged in Count I or Count II, or both.
>
> The government is not required to prove that the defendant actually fired the weapon or brandished it at someone in order to prove "use," as that term is used in this instruction.  However, you must be convinced beyond a reasonable doubt that the firearm played a role in or facilitated the commission of a drug offense.  In other words, you must find that the firearm was an integral part of the drug offense charged.

(Criminal Case 91-101 Doc. No. 35 at 6-7.)

[3]Criminal Case 6:91-cr-117-Orl-19 will be referenced as "Criminal Case 91-117."

and evidence seized from 1037 Horizon Street in Orlando.  (Criminal Case 91-117 Doc. No.

19.)  After conducting an evidentiary hearing, the Court denied the motion to suppress.

(Criminal Case 91-117 Doc. No. 50.)

The case then proceeded to trial.  At trial, Investigator Alexander testified that on

June 24, 1991, she made an undercover crack cocaine purchase from Petitioner.  (Criminal

Case 91-117 Doc. No. 72 at 5-6.)  The purchase was consummated in the kitchen of an

apartment at 1037 Horizon Street.  The crack cocaine was in a drawer in the kitchen.  *Id*. at

7-8.  When asked what she saw in the kitchen, Ms. Alexander stated that she

> saw about, about ten baggies of powder that I assume powder cocaine from
> my experience, they were pre-bagged, and bags about one ounce size.  I saw
> one gallon size zip-lock bag with substance in it, and also saw two just
> beyond the kitchen, two pyrex glass dishes with substance in it, and also saw
> two just beyond the kitchen, two pyrex glass dishes with substance that was
> near set.  It wasn't completed in the process.

*Id*. at 13-14.  Upon further inquiry, she stated that she also saw a small scale on the counter

to the right of Petitioner.  *Id*. at 14.  At the time of the transaction, in addition to Ms.

Alexander, the confidential informant, and Petitioner, two males and a female were also

in the apartment.  *Id*. at 15-18.  Crack cocaine was being cooked in the kitchen, and the two

males were checking to see if the process was complete.  *Id*. at 19-21.  Based on information

provided by Ms. Alexander concerning her purchase, a search warrant was issued and

executed at Petitioner's apartment on the evening of June 24, 1991.  *Id*. at 13.

Ms. Hunter, the woman whose apartment was the site of the crack cocaine purchase,

testified that Petitioner was cooking crack cocaine in her kitchen on June 24, 1991.  *Id*. at 29-

30.  At the time, she also observed money and cocaine in the kitchen as well as a gun on the table four to five feet away from Petitioner.  *Id*. at 30-31.  She did not know to whom the gun belonged, and Petitioner never indicated to her that it was his.  *Id*.  In addition, Ms. Hunter indicated that as far as she knew, Petitioner did not ever handle the gun that was in the kitchen.  In fact, she stated that she had "never seen him wield it or nothing.  I saw it on the table."  *Id*. at 37-39.  However, when she saw the gun on the table, Petitioner laughed and told her not to worry about it because it was not loaded.  *Id*. at 54, 203.

Agent Vidler testified that he assisted in the arrest of Petitioner and the search of the apartment.  *Id*. at 60, 64-65.  During his search, he saw a gun, cocaine, and scales on the kitchen table.  *Id*. at 65.  The gun was next to the powder cocaine.  *Id*. at 73-74.  He also found crack cocaine in the microwave and in some kitchen drawers.  *Id*. at 65.  At the time of the search, in addition to Petitioner, two other males were also present in the apartment. *Id*. at 84-85.  After hearing the evidence, the jury found Petitioner guilty of all counts as charged in the indictment.[4]  (Criminal Case 91-117 Doc. No. 47.)

*C.*      *Consolidated Sentencing*

A consolidated sentencing hearing was conducted regarding both criminal cases, and Petitioner was sentenced to an aggregate 562 month term of imprisonment. Specifically, he was sentenced in Criminal Case 91-101 as follows: count one, 262 months; count two, 240 months; and count three, 240 months.  In Criminal Case 91-117, he was

---

[4]The jury instruction regarding the using or carrying a firearm during and in relation to a drug trafficking crime count was the same as the charge given in Criminal Case 91-101. *See* Criminal Case 91-117 Doc. No. 45 at 7.

sentenced to 262 months on count one and 60 months on count two.  The 240 month term for Criminal Case 91-101 count three and the 60 month term for Criminal Case 91-117 count two were to run consecutively to each other and to the other sentences.  All other sentences were to run concurrently.  *See* Criminal Case 91-101 Doc. No. 49; Criminal Case 91-117 Doc. No. 61.

**D.**     *Direct Appeal*

Petitioner filed a direct appeal with the Eleventh Circuit Court of Appeals regarding both criminal cases.  By Order dated September 12, 1995, the Eleventh Circuit Court of Appeals issued a written, unpublished opinion affirming Petitioner's convictions.  *See* Criminal Case 91-117 Doc. No. 89.

**E.**     *Post-Conviction Proceedings*

On or about April 8, 1997,[5] Petitioner filed a Notice and Motion Seeking Certification and/or Confirmation of Filing Deadline (Criminal Case 91-101 Doc. No. 87) requesting that this Court "Certify The Date and Deadline which The Habeas Corpus Reform has Now Imposed Upon THE Filing of His Petition In this Court Seeking A Collateral Attack On His Sentence."  *Id.* at 2.  On or about April 22, 1997,[6] Petitioner filed a Motion to Stay or in the

---

[5]This is the filing date under the "mailbox" rule.  *Adams v. United States*, 173 F.3d 1339, 1341 (11th Cir. 1999) (*pro se* prisoner's § 2255 motion is deemed filed the date that it is delivered to prison authorities for mailing).

[6]The documents are not dated and do not contain a certificate of service; however, Petitioner also filed an affidavit in support of his motion for appointment of counsel (Criminal Case 91-101 Doc. No. 90) which is dated April 22, 1997.  Presumably, the affidavit and motions were delivered together to prison authorities for mailing.  Therefore, this is the date the Court has used as the filing date.  *See Washington v. United States*, 243 F.3d 1299,

Alternative to Toll Time of Filing Deadline of 28 U.S.C. § 2255 Until Order and or Ruling is Executed on Pending Motions and a Motion for Appointment of Counsel for Compliance with the Antiterrorism Act of 1996 (Criminal Case 91-101 Doc. Nos. 88 & 89).  By Order dated May 27, 1997, the Court denied all three of Petitioner's motions.  *See* Criminal Case 91-101 Doc. No. 91.

On or about November 3, 1997, Petitioner filed motions to vacate, set aside, or correct his sentence pursuant to § 2255 in each of his criminal cases (Criminal Case 91-101 Doc. No. 92; Criminal Case 91-117 Doc. No. 93).  Because they were not signed, both motions were stricken and returned to Petitioner.  *See* Criminal Case 91-101 Doc. No. 93; Criminal Case 91-117 Doc. No. 94.  Petitioner then filed identical amended § 2255 motions in both cases (Criminal Case 91-101 Doc. No. 94).[7]  The amended § 2255 motion included an "attached affidavit" which was construed as a memorandum of law.  Because the memorandum exceeded the twenty pages permitted by the Local Rules, it was stricken and returned to Petitioner.  *See* Criminal Case 91-101 Doc. No. 95.

On February 16, 1998, prior to the filing of a response by the Government, Petitioner filed a motion requesting permission to supplement his amended § 2255 motion, to file a memorandum of law, and to file additional pages to his initial motion (Criminal Case 91-

1301 (11th Cir. 2001) (inmate's § 2255 motion is deemed filed when delivered to prison officials for mailing and, absent evidence to the contrary, this is assumed to be the day the inmate signed the document).

[7]Unless otherwise noted, identical pleadings were filed in both criminal cases. Therefore, for the sake of convenience, the record cites will refer only to Criminal Case 91-101.

101 Doc. No. 98).   In the motion, Petitioner indicated that he originally claimed eight grounds for relief and that when the Court struck the attachment to his amended § 2255 motion, four of his claims were eliminated.   He sought permission to resubmit the four stricken grounds and to file a memorandum of law regarding all eight claims.   Petitioner's request to supplement his motion was denied, but he was given the opportunity to file a memorandum of law that did not exceed twenty-five pages (Criminal Case 91-101 Doc. No. 100).

On March 23, 1998, the Government filed its response to Petitioner's amended § 2255 motion (Criminal Case 91-101 Doc. No. 102).   In its response, the Government argued that Petitioner's claims were procedurally barred and that the motion was untimely.

Subsequent to the filing of the Government's response, Petitioner filed his memorandum of law in support of his amended § 2255 motion (Criminal Case 91-101 Doc. No. 103).   Petitioner's memorandum contained argument regarding three of the claims set forth in his amended § 2255 motion and asserted two new arguments.   One of the new arguments challenged his § 924(c) conviction in Criminal Case 91-101 based on the United States Supreme Court's interpretation of "use" in the case of *Bailey v. United States*, 516 U.S. 137 (1995).   *See* Criminal Case 91-101 Doc. No. 103 at 20-22.   Petitioner also filed an answer (Criminal Case 91-101 Doc. No. 105) in opposition to the Government's response to his amended § 2255 motion.   Petitioner attached to the answer a Motion to Supplement to Add Original Grounds to § 2255, which again indicated that he originally asserted eight grounds for relief and that four were deleted when his attachment was stricken.   Attached to the

motion to supplement was a memorandum of law addressing claim three of Petitioner's § 2255 motion and raising two more new claims.

On April 28, 1998, this Court entered an order denying Petitioner's § 2255 motion as untimely (Criminal Case 91-101 Doc. No. 108). The Order did not address the motion to supplement attached to Petitioner's answer to the Government's response and did not address the merits of any of the claims asserted by Petitioner. Petitioner did not appeal the denial.

In November of 2000, Petitioner filed a request for relief pursuant to 28 U.S.C. § 2241 (Case Number 6:00-cv-1512-Orl-18DAB).[8] Petitioner argued that under the *Bailey* interpretation of "use," he was actually innocent of both § 924(c) convictions (Civil Case 00-1512 Doc. No. 1). On December 19, 2000, Petitioner's § 2241 case was dismissed without prejudice for failure to pay the filing fee or submit an affidavit of indigency as required by the Local Rules (Civil Case 00-1512 Doc. No. 2). Petitioner did not appeal the dismissal.

In September of 2003, Petitioner filed a Federal Rule of Civil Procedure 60(b)(6) Motion for Relief from Judgment (Criminal Case 91-117 Doc. No. 108) regarding the denial of his amended § 2255 motion. In the Rule 60 motion, Petitioner argued that the doctrine of equitable tolling applied to his case; therefore, his § 2255 motion was not untimely. According to Petitioner, the Clerk's Office did not promptly process his April 1997 Notice and Motion Seeking Certification and/or Confirmation of Filing Deadline, which should have been construed as a motion for extension of time. The Rule 60(b) motion was denied

---

[8]Civil Case 6:00-cv-1512-Orl-18DAB will be referenced as "Civil Case 00-1512."

on September 25, 2003. (Criminal Case 91-117 Doc. No. 110).  Petitioner appealed the

denial, and the Eleventh Circuit Court of Appeals declined to issue a certificate of

appealability.  *See* Criminal Case 91-117 Doc. No. 115.

## II.      *The Instant Rule 60(b)(6) Motion*

Petitioner has filed the instant Rule 60(b)(6) motion seeking relief from the final

judgment entered on April 28, 1998, which denied his amended § 2255 motion.[9]  Petitioner

argues that under *Bailey* he is "actually innocent" of both his § 924(c) convictions and that

the "force and effect of this Court's order denying [him] leave to file an amended § 2255

complaint prevented [him] from raising his *Bailey* claim."  (Doc. No. 6 at 2.)  According to

Petitioner, he advanced a meritorious claim in his amended § 2255 motion which was never

heard, and continuing to permit his erroneous conviction to stand would undermine public

confidence in the judicial system.  *Id.* at 7-8.

The Government first argues that because Petitioner's *Bailey* claim was not fairly

raised in his amended § 2255 motion and Petitioner has not obtained permission from the

Eleventh Circuit Court of Appeals to file another § 2255 motion, the instant Rule 60(b)

motion must be denied as successive.[10]  In the alternative, the Government contends that

even if the Rule 60(b) motion is valid, it must be denied because it was not made within a

---

[9]Federal Rule of Civil Procedure 60(b)(6) grants this Court the ability to relieve a
party from a final judgment or order for any "reason justifying relief from the operation
of the judgment." Fed. R. Civ. P. 60(b)(6).  The motion, however, must be made within a
reasonable time.

[10]Section 2255 requires a petitioner to obtain authorization from the appropriate
court of appeals before filing a second or successive § 2255 motion in the district court.

reasonable time, and Petitioner has not demonstrated extraordinary circumstances justifying reopening the final judgment entered in this case.

In *Gonzalez v. Crosby*, 545 U.S. 524 (2005), the United States Supreme Court addressed the applicability of the restrictions on second or successive § 2254 petitions in the Rule 60(b) context.  The Court determined that presenting new claims, new evidence, or a change in law through a Rule 60(b) motion would circumvent the statutory restrictions on second or successive habeas petitions.  *Id*. at 531-32.  Therefore, the *Gonzalez* Court determined that a Rule 60(b) motion that added a new ground for relief or attacked "the federal court's previous resolution of a claim *on the merits*" should be treated as a second or successive habeas petition.  *Id*. at 532.  Conversely, "when a Rule 60(b) motion attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal proceedings," it does not constitute a "claim" for relief subject to the restrictions on habeas corpus applications.  *Id*. 532-33.  In particular, a movant's argument that a district court's "previous ruling which precluded a merits determination was in error–for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar" were cited as examples of non-habeas claims which were properly raised in a Rule 60(b) motion.[11]  *Id*. at 532 n.4.

Liberally construing Petitioner's instant motion as this Court is required to do, Petitioner asserts that this Court erred in not resolving his motion to supplement and not

---

[11]The Eleventh Circuit Court of Appeals has determined that *Gonzalez'* "holding and rationale apply equally to § 2255 . . . ."  *See United States v. Terrell,* 141 Fed. App'x. 849, 851 (11th Cir. 2005).

considering his claim of factual innocence under *Bailey* as an exception to the one-year period of limitation. Thus, Petitioner has not asserted a new claim, new evidence, or a change in the law as the basis for his Rule 60(b) motion. In fact, he has attacked the integrity of the prior proceedings in precisely the manner permitted under *Gonzalez*. Therefore, this Court finds that Petitioner's Rule 60(b) is not subject to the restrictions on second or successive § 2255 motions.

The Government also contends that even if Petitioner's Rule 60(b)(6) motion is not successive, it affords him no relief because it is untimely and fails to raise extraordinary circumstances justifying the reopening of final judgment. On its face, Rule 60(b) states that a motion must be made "within a reasonable time." For subsections one, two, and three of Rule 60(b), one year is prescribed as the outer limit of reasonableness. In addition, the Eleventh Circuit Court of Appeals has recognized that Rule 60(b) is intended "only for extraordinary circumstances." *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1316 (11th Cir. 2000). Thus, "[the movant] must do more than show that a grant of its motion might have been warranted. [The movant] must demonstrate a justification for relief so compelling that the district court was *required* to grant [the] motion." *Rice v. Ford Motor Co.*, 88 F.3d 914, 919 (11th Cir. 1996).

Reasonableness can only be determined by evaluating all the circumstances of each particular case. *See Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981) (stating that a "reasonable time" depends on the facts of each case, considering especially interest in finality, reason for delay, and ability of movant to learn of grounds for motion). Generally,

the two main considerations involve the moving party's reasons for the delay and the potential for prejudice to the non-movant.  *See Smith v. Jackson Tool & Die, Inc.*, 426 F.2d 5, 8 (5th Cir. 1970).

In the instant case, Petitioner, who is not an attorney, repeatedly attempted to challenge his § 924(c) convictions.  He raised the argument in his amended § 2255 motion but was thwarted by application of the page limitation set forth in the Local Rules.  Twice during the pendency of the § 2255 proceedings he attempted to reassert the ground for relief, but he was unsuccessful.  Petitioner later attempted to challenge the § 924(c) convictions through a § 2241 petition but was thwarted by application of the Local Rules.  Finally, Petitioner unsuccessfully attempted to reopen his § 2255 proceedings through the filing of a Rule 60(b)(6) motion in 2003.  Although Petitioner's attempts to gain relief were not a paragon of diligence, the Court notes that he is neither a lawyer nor specially trained in the law.

Respondent has not offered any potential for prejudice, and the Court cannot discern any on this record.  After consideration of the reasons for the delay and the potential prejudice to Respondent, the Court cannot conclude that Petitioner's delay in bringing this action is unreasonable.

Moreover, the unique facts of this case constitute extraordinary circumstances compelling the grant of relief.  Given the clarification of the law since Petitioner's 1991 trials, the record demonstrates that Petitioner is factually innocent of the using and carrying a firearm conviction for which he was convicted and sentenced in Criminal Case 91-101.

14

At the time of Petitioner's trials, Eleventh Circuit precedent dictated that the presence of a weapon near a significant quantity of illegal drugs was sufficient to submit the "use" issue to the jury. *See United States v. Jones*, 28 F.3d 1574 (11th Cir. 1994), *vacated, Jones v. United States*, 516 U.S. 1022( 1995), *on remand, United States v. Jones*, 74 F.3d 275 (11th Cir. 1996) (vacating § 924(c) convictions for insufficient evidence). However, in *Bailey v. United States*, 516 U.S. 137 (1995), the United States Supreme Court narrowed the meaning of "use" and held that under § 924(c)(1) "use" requires "evidence sufficient to show an active employment of a firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." *Id*. at 143. Thus, a defendant cannot be convicted under § 924(c) for the "use" of a firearm merely for storing a weapon near drugs or drug proceeds. If a hidden gun is "not disclosed or mentioned by the offender," it is not "used" for purposes of section 924(c). *Id*. at 149. The *Bailey* Court further recognized that a firearm can be carried without being used. *Id*. at 146.

The facts at trial in Criminal Case 91-101 established that Petitioner was asleep in the lower bunk of a bunk bed, the firearm was concealed under the mattress of the top bunk, and crack cocaine was located between the pillows of the top bunk. Thus, under the law in 1991, the presence of the firearm near the crack cocaine was sufficient to constitute use. The subsequent clarification of the law clearly exonerates Petitioner of this § 924(c) charge. Asleep in the lower bunk, Petitioner was neither "actively employing" nor carrying the firearm in relation to the predicate drug offense. *See United States v. Wainuskis*, 138 F.3d 183, 186 (5th Cir. 1998) (determining that a defendant who was lying in bed with a loaded

pistol within arm's reach under the mattress did not violate the use component of § 924(c));
*United States v. King*, 73 F.3d 1564, 1567 (11th Cir. 1996) ("[A] firearm found between a
mattress and box spring in a bedroom next to the room where most of the drug trafficking
crime occurred does not constitute the type of 'active employment of the firearm' that is
necessary for a conviction under the 'use' prong of § 924(c)(1).  That is true even though the
drugs being purchased . . . ended up in the same room with the gun."); *see also United States
v. Anderson*, 89 F.3d 1306, 1314-15 (6th Cir. 1996) (holding that a defendant who reached for
a gun hidden under a mattress "used" the firearm, but recognizing that if he had merely
placed the gun under the mattress, *Bailey* would preclude a finding of use).

The evidence adduced at trial cannot support a conviction for either using or
carrying a firearm under § 924(c).  Under the law of *Bailey*, the facts were insufficient to
support a guilty verdict and a directed verdict was warranted.  Thus, it is more likely than
not that no reasonable, properly instructed juror would have convicted Petitioner.  *See
Schlup v. Delo*, 513 U.S. 298, 327 (1995) (stating that to establish actual innocence a petitioner
must "show that it is more likely than not that no reasonable juror would have convicted
him").  Petitioner has demonstrated that he is actually innocent of the § 924(c) charge
(count three) in Criminal Case 91-101.[12]

---

[12]Furthermore, under the *Bailey* Court's definition of use, the Government cannot
now produce any evidence to show "active employment" of the firearm regarding count
three of Criminal Case 91-101.  The uncontroverted evidence established that Petitioner
was asleep at the time of the arrest, and the firearm was concealed under the mattress of
the top bunk bed.  Clearly, the facts support only storage or possession of the firearm, as
opposed to actual active employment, and an evidentiary hearing is not warranted
regarding this conviction.

Having determined that Petitioner is actually innocent of the weapons charge, this Court concludes that a miscarriage of justice will occur if his *Bailey* claim is not considered. Furthermore, Petitioner's actual innocence is a basis for equitable tolling of the period of limitation set forth in § 2255. Since the *Bailey* decision establishes that Petitioner is actually innocent of count three of Case Number 91-101, he is entitled to have that conviction and sentence vacated.

The facts underlying the § 924(c) charge in Criminal Case 91-117 are a closer call. As set forth earlier, the undercover agent who purchased drugs from Petitioner did not testify that a weapon was present at the time of the transaction. However, the woman in whose apartment the transaction took place testified that the gun was on a table in the kitchen within feet of Petitioner. She also stated that she did not know to whom the weapon belonged, that she had not seen Petitioner handle it, but that he did indicate that it was not loaded.

After determining that "use" under § 924(c) specifically required evidence of active employment of the firearm, the *Bailey* Court specifically observed that "a reference to a firearm calculated to bring about a change in the circumstances of the predicate offense is a 'use,' just as the silent but obvious and forceful presence of a gun on a table can be a 'use.'" *Bailey*, 516 U.S. at 148. The Court further noted that "[i]f the gun is not disclosed or mentioned by the offender, it is not actively employed, and it is not 'used.'" *Id*. at 149. Thus, visible presence alone is insufficient to support "use" under *Bailey*. Instead, the

presence must be accompanied by a threat, whether it is explicitly enunciated by the defendant or implicitly created by the circumstances:

> A reference to a firearm intended to change behavior *is* a "use" because such a reference is a threat by definition, but a gun on a table merely *can be* a "use" because, depending on the situation, it might not be threatening at all. If the visible presence of a firearm is accompanied by circumstances that combine to create an implicit threat, then the firearm has been "used." Otherwise, the firearm is merely present.

*Latorre v. United States*, 193 F.3d 1035, 1040 (8th Cir. 1999).

In Case 91-117, the record is insufficient to establish Petitioner's actual innocence. Although the face of the record does not reflect sufficient information from which to determine whether the gun on the table was threatening or merely visible, it also does not establish factual innocence. Accordingly, Petitioner is entitled to an evidentiary hearing to determine whether he is actually innocent of the § 924(c) charge in Case Number 91-117. This Court notes, however, that actual innocence is different from legal sufficiency of the evidence. As explained by the United States Supreme Court:

> "[A]ctual innocence" means factual innocence, not mere legal insufficiency. In other words, the Government is not limited to the existing record to rebut any showing that petitioner might make. Rather, on remand, the Government should be permitted to present any admissible evidence of petitioner's guilt even if that evidence was not presented during petitioner's plea colloquy and would not normally have been offered before our decision in *Bailey*.

*Bousley v. United States*, 523 U.S. 614, 623-24 (1998).

Accordingly, it is

**ORDERED**:

18

1.      Petitioner's Motion Filed Under Federal Rule of Civil Procedure 60(b)(6) for Relief From Final Judgment Order Denying 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Doc. No. 6, filed July 31, 2007) is **GRANTED** in part.  For the reasons expressed, the sentence for count three of Case Number 91-101 contained in the Judgment in a Criminal Case (Criminal Case 91-101 Doc. No. 49) is **VACATED**, thus, reducing Petitioner's overall sentence by 240 months.  In all other respects the Judgment remains in full force and effect.

2.      The Court will hold an evidentiary hearing to determine whether Petitioner is actually innocent of the § 924(c) charge in Case Number 91-117.  The hearing is scheduled for **Wednesday, September 26, 2007, at 9:00 a.m.,** United States Courthouse and Federal Building, 401 W. Central Boulevard, Courtroom 3B, Orlando, Florida 32801.

3.      The United States Magistrate Judge is directed to appoint counsel on behalf of Petitioner.

4.      **On or before August 31, 2007**, Petitioner shall file a statement entitled "Pretrial Narrative Statement."  The Pretrial Narrative Statement shall contain:

(a)     A brief general statement of the case.

(b)     A narrative written statement of the facts that will be offered by oral or documentary evidence at the evidentiary hearing.

(c)     A list of all exhibits to be offered into evidence at the evidentiary hearing.

(d)     A list of the full names and addresses of places of employment for all the witnesses that Petitioner intends to call.

(e)     A summary of the anticipated testimony of <u>each</u> witness named in (d).

5.     **On or before September 12, 2007**, the Government shall filed a "Pretrial Narrative Statement," entitled as such.  The Pretrial Narrative Statement shall comply with paragraphs 4(a) through (e) above.

**DONE AND ORDERED** at Orlando, Florida, this __22nd___ day of July, 2007.

```
PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT
```

Copies to:
sa 7/23
Anthony Lamar Peterson
Counsel of Record
U.S. Marshal
U.S. Probation
U.S. Magistrate Judge