UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ANTHONY LAMAR PETERSON,

      Petitioner,

v.                                   CASE NO. 6:97-1340-Orl-19
                                   (6:91-cr-101-Orl-19)
                                   (6:91-cr-117-Orl-19)

UNITED STATES OF AMERICA,

      Respondent.

_____

## **ORDER**

Petitioner filed a Motion Filed Under Federal Rule of Civil Procedure 60(b)(6) for Relief

From Final Judgment Order Denying 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct

Sentence (Doc. No. 6, filed July 31, 2006).[1]  Petitioner argued that under *Bailey v. United States*,

516 U.S. 137 (1995), he was "actually innocent" of both his § 924(c) convictions and that the "force

and effect of this Court's order denying [him] leave to file an amended § 2255 complaint prevented

[him] from raising his *Bailey* claim." (Doc. No. 6 at 2.)  After thorough consideration of Petitioner's

claims and the Government's response, this Court agreed that Petitioner was actually innocent of

the § 924(c) conviction in criminal case 91-cr-101-Orl-19.  *See* Doc. No. 16.  Accordingly, the

conviction was vacated.  In addition, the Court scheduled an evidentiary hearing to determine

whether Petitioner was also actually innocent of the § 924(c) charge in criminal case 91-cr-117-Orl-

19 ("Criminal Case 91-117).  *Id.*  The evidentiary hearing was held on December 11, 2007.

_____

[1]The procedural history is set forth more fully in the Court's July 23, 2007, Order. *See* Doc.
No. 16.

**Testimony at the Evidentiary Hearing**

Petitioner testified that he was present at the apartment of Kemen Hunter[2] on the evening of June 24, 1991, when the search warrant was executed.  At that time, a firearm was found  in the kitchen.  Petitioner stated that the firearm was not his and that he did not use, display, carry, disclose, handle, or touch it.  In addition, he did not threaten or menace anyone with the firearm.

On cross-examination, Petitioner indicated that he and Freddie Williams were distributing drugs the evening that the search warrant was executed.  Petitioner's uncle, Andrew Peterson, was talking to Mr. Williams about the firearm because someone had "disrespected" Andrew Peterson and he was interested in obtaining a firearm.

According to Petitioner, he did not know who brought the firearm to the apartment.  He believes that Mr. Williams and Andrew Peterson made some arrangements.  Mr. Williams told Petitioner not to worry because there were no bullets in the firearm.

Petitioner admitted that a scale, $13,000 cash, and crack cocaine were found in the kitchen when the search warranted was executed.  He testified that he did not remember the firearm and that Mr. Williams also occupied the kitchen.

On redirect, Petitioner stated that he was not physically in the kitchen at the time the search warrant was executed; he was on the telephone in a bedroom.  In the time between when he sold the drugs to the undercover agent and the execution of the search warrant, at least five people entered the apartment.  In addition, Mr. Williams cooked and sold drugs in the kitchen that day.

---

[2]The Court notes that the trial transcript reflects a spelling of "Kemine" Hunter, while the transcript from the recent evidentiary hearing reflects a spelling of "Kemen" Hunter.  In this Order, the Court has used the spelling from the evidentiary hearing.

In rebuttal, the Government presented Ms. Hunter, the woman whose apartment was the site of the drug purchase and the search warrant. She testified that Petitioner gave Jack Lucket drugs for the firearm a few hours before the search warrant was executed.[3] She also stated that she had never known Petitioner to have a gun and that he did not use it to threaten anyone nor did he use it in the drug trade. According to Ms. Hunter, the firearm was just sitting on the table, and she did not know to whom the gun belonged. She never discussed the firearm with Andrew Peterson or asked him if it was his.

After Ms. Hunter's testimony, Petitioner was recalled to the stand. He expressly denied getting the firearm from Jack Lucket.

Andrew Peterson testified that he was present when the search warrant was executed on June 24, 1991. He was alone in the kitchen in front of the table where the firearm was sitting. He stated that he had called Petitioner earlier to tell him that he was having some problems, and they discussed a firearm. Petitioner indicated that he did not need "that kind of trouble". When Andrew Peterson arrived at the apartment, the firearm was on the table. He testified that he had possession of the firearm all night and that Petitioner never had possession of it.[4]

---

[3]The Court notes that this testimony is in stark contrast to the testimony given by Ms. Hunter at Petitioner's trial. During the trial, she stated that she did not know whose gun was on the table, that Petitioner never told her it was his gun, and that she never asked him whose gun it was. (Doc. No. 72 at 30.) At trial, Ms. Hunter never mentioned Jack Luckett, in fact, she stated that when she "came [in the gun] was on the table." *Id.* at 37. She further testified that when discussing the gun with a law enforcement agent, "he was asking like who did I know where it came from, I told him no, stuff like that." *Id.* at 39.

[4]Andrew Peterson's testimony also differs from trial testimony. At trial, he indicated that he had no idea to whom the handgun belonged and that he did not have any discussion about the gun during the time he was at the apartment. (Doc. No. 73 at 216.)

**Legal Discussion**

After reviewing the trial testimony and hearing further testimony in the instant proceeding, this Court determines that there is no evidence to support the § 924(c) conviction in Criminal Case 91-117.  As noted in the July 23, 2007, Order (Doc. No. 16), the *Bailey* Court held that under § 924(c)(1), "use" requires "evidence sufficient to show an active employment of a firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." *Bailey*, 516 U.S. at 143.  "[A] reference to a firearm calculated to bring about a change in the circumstances of the predicate offense is a 'use,' just as the silent but obvious and forceful presence of a gun on a table can be a 'use.'" *Id.* at 148.  The Court further noted that "[i]f the gun is not disclosed or mentioned by the offender, it is not actively employed, and it is not 'used.'" *Id.* at 149.  Thus, visible presence alone is insufficient to support "use" under *Bailey*.  Instead, the presence must be accompanied by a threat, whether it is explicitly enunciated by the defendant or implicitly created by the circumstances:

> A reference to a firearm intended to change behavior *is* a "use"because such a reference is a threat by definition, but a gun on a table merely *can be* a "use" because, depending on the situation, it might not be threatening at all.  If the visible presence of a firearm is accompanied by circumstances that combine to create an implicit threat, then the firearm has been "used."  Otherwise, the firearm is merely present.

*Latorre v. United States*, 193 F.3d 1035, 1040 (8th Cir. 1999).

Neither at trial nor during the recent hearing was any evidence submitted indicating that the presence of the gun was accompanied by either an explicit or implicit threat.  As set forth in the earlier Order, the undercover agent who purchased drugs from Petitioner did not testify that a weapon was even present at the time of the transaction.  Since the agent has since passed away, she is unavailable to provide further evidence.  Petitioner testified that the firearm was not his and that

he did not use, display, carry, disclose, handle, or touch it.  In addition, he stated that he did not threaten or menace anyone with the firearm.  This testimony is uncontradicted and effectively makes it impossible to establish use as defined under *Bailey*.

Ms. Hunter's testimony that Petitioner exchanged drugs for the firearm several hours before the search warrant was executed, even if true, does not establish the firearm was used during the predicate drug offense, i.e., the sale to the undercover agent.  Furthermore, the United States Supreme Court recently determined that "a person does not 'use' a firearm under § 924(c)(1)(A) when he receives it in trade for drugs." *Watson v. United States*, No. 06-571, 2007 WL 4292111, at *7 (Dec. 10, 2007).

After thoroughly reviewing the trial and hearing evidence, this Court concludes that under *Bailey*, Petitioner is factually innocent of the § 924(c) conviction in Criminal Case 91-177. Allowing the conviction to stand would constitute a miscarriage of justice; therefore, Petitioner is entitled to have the conviction and sentence vacated.

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1.      Petitioner's Motion Filed Under Federal Rule of Civil Procedure 60(b)(6) for Relief From Final Judgment Order Denying 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Doc. No. 6, filed July 31, 2006) is **GRANTED**.  For the reasons expressed, the conviction and sentence for count two of Case Number 91-117 contained in the Judgment in a Criminal Case (Criminal Case 91-117, Doc. No. 61) are **VACATED**, thus reducing Petitioner's overall sentence by 60 months.  In all other respects the Judgment remains in full force and effect.

2.      The Clerk of the Court shall enter judgment accordingly in this instant civil case and is directed to close this case.

3.      The Clerk of the Court is to file a copy of this Order in criminal cases 6:91-cr-101-

Orl-19 and 6:91-cr-117-Orl-19.

**DONE AND ORDERED** at Orlando, Florida, this _24th___ day of January, 2008.

_____

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies to:
sa 1/24
Counsel of Record

6